IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THIRUVALAM INDIRA, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-4050 |
| | : | |
| DENNIS R. GROFF, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                  **April 13, 2015**

Plaintiffs Thiruvalam Indira, Mookan Periyasamy, and Aswin Group, LLC t/a Paradise
Motel brings claims against Paradise Township and four Township officials pursuant to § 42
U.S.C. §§ 1983, 1981, and state law. Defendants filed a motion for summary judgment as to all
claims, to which Plaintiffs filed a response, and Defendants replied. An oral argument on the
motion was held on March 16, 2015. For the reasons set forth below, Defendants' motion will be
granted in part and all claims against Defendants except for those in Count One of the Revised
Amended Complaint will be dismissed.

## BACKGROUND

Paradise Township is a municipal corporation in Lancaster County, Pennsylvania.
Plaintiffs Periyasamy and Indira, husband and wife, and Aswin Group, LLC own and operate
Paradise Motel (the property) located in the Township. Plaintiffs bring claims against Paradise
Township and four Township officials—(1) Dennis Groff, Township Roadmaster, Emergency
Manager/Coordinator, and Chairman of Township Sewer Authority, (2) Dominick Lopez,
Township part-time zoning officer, (3) Dale L. High, Township Sewage Enforcement Officer,
and (4) Sally Riehl, Township Secretary/Treasurer. Plaintiffs assert that since they purchased the
property in 2003, Defendants have violated their constitutional rights. Plaintiffs bring Counts
One, Two, Three, and Four of the Revised Second Amended Complaint pursuant to 42 U.S.C.

§ 1983: In Count One they allege Defendants trespassed on their property without warrants during non-emergencies in violation of the Fourth Amendment; in Count Two they allege Defendants violated their procedural due process rights by issuing defective and improper citations, fines, and condemnation notices; in Count Three they assert a substantive due process claim, alleging Defendants interfered with their right to be let alone on their property and their right to legally use and sell the property; and in Count Four, they assert the Defendants deprived them of their equal protection of the laws by using racist language and exhibiting differential treatment toward Plaintiffs compared to Township corporations with white owners. In Count Five they assert, pursuant to 42 U.S.C. § 1981, that Defendants deprived them of the equal benefit of all laws and proceedings and subjected them to unequal punishment, pains, penalties, taxes, licenses, and exactions. In Count Six they assert Defendants have interfered with their attempted sales of the property.[1]

**DISCUSSION**

A motion for summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to produce specific facts, supported by evidence in the record, showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). The Court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,

---

[1] In their response to Defendants' motion for summary judgment and at the March 16, 2015, oral argument, Plaintiffs withdrew Count Seven of the Revised Second Amended Complaint, which asserted a claim for abuse of civil process. Accordingly, the Court will not address this claim.

974 F.2d 1358, 1363 (3d Cir. 1992). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (internal quotation marks omitted)).

### 1. Counts One, Two, Three, and Four: § 1983 Claims

42 U.S.C. § 1983 provides relief for violations of an individual's constitutional rights by someone acting under state authority. Here, Plaintiffs assert four claims pursuant to § 1983 against the Township and the individual Township officers in both their official and individual capacities.[2]

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alterations in original) (citations and internal quotation marks omitted). Alternatively, custom arises when, "though not authorized by law, such practices of state officials [are] so permanent and well settled as to

---

[2] Plaintiffs' claims against the individual Township officers in their official capacities are viewed as claims against the Township. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official personally . . . ." (internal citations omitted)); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

virtually constitute law." *Id.* (alterations in original) (citations and internal quotation marks omitted). In either case, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *See id.* Further, a municipality may only be held liable under § 1983 when the Government's policy or custom causes the injury alleged in the complaint; there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A municipality may not be held liable under § 1983 for its employee's violation of a citizen's constitutional rights on a respondeat superior theory of liability. *See Monell*, 436 U.S. at 690-92. A municipality is liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).

As to Plaintiffs' §1983 claims against the Township officials in their individual capacities, the doctrine of qualified immunity protects government officials from liability for civil damages so long as the officials' "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 398-99 (3d Cir. 2003). An official is not entitled to qualified immunity if (1) the facts alleged make out a violation of a constitutional right and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Courts can perform these two inquiries in either order. *See Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009). A right is clearly established if "its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right." *United Artists*, 316 F.3d at 399 (quoting *Sterling v. Borough of Minersville*, 232 F.3d 190, 193 (3d Cir. 2000)). "This

4

inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotation marks omitted)).

In addition, Plaintiffs' § 1983 claims are subject to a two-year statute of limitations. *See Rose v. Bartle*, 871 F.2d 331, 347 n.13 (3d Cir. 1989); *Bartholomew v. Fischl*, 782 F.2d 1148, 1155 (3d Cir. 1986). Plaintiffs filed their original Complaint against these Defendants on July 2, 2014, and therefore, unless the continuing action doctrine applies, any claims accruing prior to July 2, 2012, are time barred.

### a. Count One: Fourth Amendment

In Count One, Plaintiffs assert the Defendants, not including Riehl, have continually trespassed on their property, and the Township has a policy, practice, or custom of allowing such trespass. The Court finds the continuing action doctrine does not apply to this claim, but there are questions of fact as to the legality of Defendants' entries into the property that occurred after July 2, 2012.[3] Therefore, Defendants' motion for summary judgment as to Count One for alleged Fourth Amendment violations occurring after July 2, 2012, is denied.

---

[3] A claim pursuant to 42 U.S.C. § 1983 is subject to a two-year statute of limitations. *See Rose*, 871 F.2d at 347 n.13; *Bartholomew*, 782 F.2d at 1155. Plaintiffs assert, however, Defendants' trespassing was a continual course of conduct, and therefore, the continuing violation doctrine should apply to allow the Court to consider acts prior to the two-year statute of limitations. The continuing violation doctrine is an "equitable exception to the timely filing requirement." *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995), *abrogated on other grounds by Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)).

The Court finds there is no evidence in the record supporting Plaintiffs' allegation of a continuing course of conduct constituting a violation of their Fourth Amendment rights. Some acts occurred after July 2, 2012, and therefore fall within the statute of limitations (i.e. the

The Fourth Amendment protects an individual's reasonable expectation of privacy in places searched. U.S. Const. amend. IV; *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). An expectation of privacy must be "one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). "Without question, the home is accorded the full range of Fourth Amendment protections." *Lewis v. United States*, 385 U.S. 206, 211 (1966). The area immediately surrounding a residence that "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life," referred to as the curtilage, is also protected from unreasonable searches and seizures. *See United States v. Dunn*, 480 U.S. 294, 300 (1987) (citations and internal quotation marks omitted). The extent of the curtilage is determined by "factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *Id.* The Fourth Amendment's prohibition of unreasonable searches and seizures is applicable to commercial premises as well as private homes, but the expectation of privacy for a commercial premise "is different from, and indeed less than, a similar expectation in an individual's home." *See New York v. Burger*, 482 U.S. 691, 699 (1987).

From the record, it is clear Defendants have entered Plaintiffs' property several times. Plaintiffs argue the Paradise Motel is open only to current and prospective guests and residents, and the Township officials do not have invitee privilege to be on their property. In addition, Plaintiffs assert the Motel serves as Plaintiffs' home so they have a higher expectation of privacy in the property than a typical commercial property and there are "No Trespassing" and "Private

---

alleged trespassing on the property to retrieve the defective April 2014 Notice of Condemnation and an October 2014 inspection of the property). The acts occurring prior to the applicable limitations period, however, do not involve the same people every time and do not suggest a persistent, ongoing pattern. Even if Defendants entered the property prior to July 2012, the acts were discrete and isolated, and not part of a continuing violation.

Property" signs posted on the property. They point out that Groff admitted at his deposition he entered the property at least eight times but only had permission once. *See* Pls.' Statement of Undisputed Facts (PSUF) Ex. 5, at 27.[4] Indira testified her husband, Periyasamy, told her that at least twice that men resembling Groff and Lopez were in the back of their property. Pls.' Ex. 1, at 123, Ex. 47, at 33-35. She also stated Defendants came on to the property on the day of an "alleged fire," the Township hired Thomas H. Erb & Sons, Inc. to perform an inspection without her permission and his inspection photos show High's truck on the property, and Defendants entered the property "two or three other times" to check the swail ditch. Pls.' Ex. 1, at 126-29. Charles Michael Wood, a witness for the Plaintiffs, testified that the property had "No Trespassing" signs, he observed Township officials on the property at least six times without permission, and he repeatedly asked the officials to leave. Pls.' Ex. 17, at 15-19. Helen Robinson, an employee and resident of the Motel, also testified that there were "No Trespassing" signs on the property, she had seen Township officials on the property four or six times, and she saw someone from the Township checking sewage on the property in April 2014. Pls.' Ex. 16, at 16-18, 22.[5]

Although the dates of the alleged trespasses are not completely clear, the record demonstrates that many of the times the Township officials were on Plaintiffs' property were to investigate possible violations of the Pennsylvania Sewage Facilities Act. Groff admitted he had entered the property at least eight times over the years and only had permission "the last time"

---

[4] For ease of reference, the Court will hereinafter refer to the exhibits attached to Plaintiffs' Statement of Undisputed Facts as "Pls.' Ex."

[5] Periyasamy also testified he heard knocking on his door at night which he claims was the Township threatening to kill him, but he never opened the door to see if it was Township officials. Pls.' Ex. 47, at 60-61. It is also unclear on what date this alleged knocking occurred.

when he "wasn't there personally." Defs.' Reply Ex. C, at 27-28. Presumably, Groff interpreted the word "permission" to mean court permission, and this "one time" with permission was pursuant to a December 2014 search warrant the Township obtained from the County. As to the other times, Groff stated that he remembered two times he stopped to talk to Indira,[6] one time he was with Linda Kling, Plaintiffs' attorney, and one time he was with Matt Homsher, also Plaintiffs' attorney. *Id.* at 28. He also remembered going onto the property on April 23, 2014, to measure for a proposed sewer line; he admitted he did not call to check if he could enter the property on this date, but stated his visit was in response to Plaintiffs' request through their attorney for a quote on the cost to connect to the Township sewer line. *Id.* at 29. He did not remember entering the property in October 2014, but said it was possible. *Id.* at 29-30.[7] Indira testified she was never present when Township officials entered the property illegally, *see* Pls.' Ex. 1, at 123, and Groff claims he spoke to Indira during two of the eight. Therefore, it seems as though of the "maybe eight" times Groff entered the property, only the October 2014 visit and one other unidentified visit was without Plaintiffs' permission or in response to Plaintiffs' request.

Defendants assert every time they entered the property was under authority pursuant to the Pennsylvania Sewage Facilities Act, which regulates the planning, permitting, and design of sewage facilities in Pennsylvania. 35 Pa. Cons. Stat. Ann. § 750.1, et seq. One of the stated purposes of the state legislature in enacting the Act was "to protect the public health, safety and welfare of its citizens through the development and implementation of plans for the sanitary

---

[6] Groff states he spoke to "Sammi," which Plaintiffs at the oral argument indicated could be either Indira or Periyasamy, but later in the same deposition Groff referred to "Sammi" with a female pronoun, indicating he was referring to Indira.

[7] Plaintiffs allege on this date Defendant High repeatedly called Indira a liar over the phone.

disposal of sewage waste." *Id.* § 750.3(1). The Act requires anyone installing, constructing, altering, repairing, or connecting to a sewage system to obtain "a permit indicating that the site and the plans and specifications of such system are in compliance with the provisions of this act and the standards adopted pursuant to this act." *Id.* § 750.7(a)(1).[8] Local municipalities are largely responsible for administering the Act's sewage facilities program, and the Act requires the local agency's sewage enforcement officer to investigate permit applications and issue permits to build and operate sewage disposal systems. *Id.* §§ 750.7(a), 750.2. The Act permits local agency representatives to enter upon Township land without a warrant to make inspections, perform tests, and verify measurements in connection with the permits required for the installation, construction, alteration, repair and connection of sewage systems. *Id.* §§ 750.8(b)(5), (b)(10).

It is not disputed that after Plaintiffs bought the Motel, they applied for and were granted a building permit in 2004, and Plaintiffs constructed some sort of dwelling adjacent to the original building. Defs.' Statement of Undisputed Facts Ex. 4.[9] In addition, it appears from High's deposition that there are three or four separate sewage systems for the entire property. Defs.' Reply Ex. A, at 28, 31-37. It is unclear to the Court, however, whether the new building has a completely separate sewage system or was somehow connected to the older sewage systems and whether Plaintiffs applied for a permit under the Act for this new construction. Presumably Plaintiffs were required to apply for a permit whether they constructed an on-lot sewage system, attached to an old system, or connected to the Township sewage system, and

---

[8] A "permit-exempt" system is only available for residential structures, and although Plaintiffs live at the Motel, the property was not solely a residential structure.

[9] For ease of reference, the Court will hereinafter refer to the exhibits attached to Defendants' Statement of Undisputed Facts as "Defs.' Ex."

such an application necessitated inspections and measurements by the Township. It remains a question of fact, however, whether the Defendants' warrantless entries on Plaintiffs' property after July 2, 2012, were in connection to an application for a permit under the Act, especially in light of the fact the permit would have originated in 2004 and the record demonstrates warrantless entries up to 2014, ten years later.[10] The Court notes that the fact the Township eventually obtained a search warrant for the property in December 2014, does not indicate the other entries were not pursuant to the Act or in violation of Plaintiffs' Fourth Amendment rights.[11]

---

[10] High testified that that the sewage problems have been ongoing since before 2006, Defs.' Reply Ex. A, at 30, presumably beginning when the new construction was completed. High also stated that as of January 2015, it was "quite obvious" at least two of the property's sewage systems were not functioning properly. *Id.* at 28, 31-37.

[11] Although the Court finds there is a question of fact as to which of the searches were conducted under the Sewage Act, any searches pursuant to this Act were lawful and not in violation of Plaintiffs' rights. The Supreme Court has held a warrantless inspection of a private dwelling by a municipal administrative officer without consent of the owner is generally unreasonable and a "significant intrusion[] upon the interests protected by the Fourth Amendment." *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 534 (1967). However, "in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet reasonable legislative or administrative standards." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (internal quotation marks and citations omitted). A state's "supervision of a regulated industry" presents "special needs," that justify these departures." *Id.* at 873-74.

When applying the special needs doctrine, the Court must consider three factors: (1) "the nature of the privacy interest allegedly compromised by the [challenged governmental conduct]," *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 830 (2002); (2) "the character of the intrusion imposed by the [challenged conduct]," *id.* at 832; and (3) "the nature and immediacy of the [state's] concerns and the efficacy of the [governmental conduct] in meeting them," *id.* at 834.

In this case, the Motel was open to guests and although the individual Plaintiffs lived at the Motel, the property was not strictly private property. From the photographs in the record and statements at oral argument, it appears the property was not enclosed and was clearly visible from the street. Even if the entire outside property could be considered the "curtilage" of the Motel, Plaintiffs still possessed a diminished expectation of privacy for the outside area compared to the interior spaces of the Motel. This expectation was also diminished because any work constructing new structures necessarily involved permits from the Sewage Facilities Act,

Thus, there are questions of fact how many times Defendants entered Plaintiffs' property without permission and whether those warrantless entries were permissible under the Act or some other authority. These questions preclude summary judgment on the individuals' claims of qualified immunity because warrantless unauthorized entries would be a violation of Plaintiffs' rights and Defendants have not shown there is an absence of a genuine issue of material fact with respect to the objective reasonableness of their conduct. In addition, it is arguable that such entries on behalf of officials with policy-making authority were so permanent and well settled as to virtually constitute law, rendering the Township liable as well. As such, Defendants' motion

---

and Plaintiffs were on notice that the application process would involve some form of site inspection. As such, Plaintiffs had a reduced expectation of privacy in the land surrounding the Motel.

Second, the level of intrusion of the inspections pursuant to the Act was minimal as it is undisputed that Defendants only ever entered the open area surrounding the Motel, and never entered the Motel building itself. *See* Defs.' Mot. for Sum. J. Ex. C, at 77.

As to the state's concerns and the efficiency of the conduct, waste disposal and its impact on public health are a very important governmental interest and subject to strict regulation. *See also Donovan v. Dewey*, 452 U.S. 594, 602 (1981) (holding that the surprise warrantless inspections required by the Mine Safety and Health Act did not offend the Fourth Amendment because there is a substantial federal interest in "improving the health and safety conditions in the Nation's underground and surface mines"); *Palmieri v. Lynch*, 392 F.3d 73, 79-80 (2d Cir. 2004) (applying special needs doctrine to state environmental agency inspection of property owner's dock who had applied for tidal-wetland permit). The Pennsylvania Supreme Court has upheld a warrantless inspection on private property by a Department of Environmental Resources inspector pursuant to the Solid Waste Management Act, 35 P.S. § 6018.101, et seq., a law similar to the Sewage Facilities Act, finding "the risk to the public health, safety and welfare, and to the environment, posed by improper and inadequate solid waste practices . . . necessitates the warrantless inspection procedures authorized by the statute." *Com., Dep't of Envtl. Res. v. Blosenski Disposal Serv.*, 566 A.2d 845, 849 (Pa. 1989) (internal quotation marks and citation omitted). According to the stated purpose of the Sewage Facilities Act, the state legislature wished to protect the public health, safety, and welfare of its citizens in relation to the disposal of sewage waste. 35 Pa. Cons. Stat. Ann. § 750.3(1). The warrantless inspections pursuant to the Act are not limitless and are allowed only for inspections and tests in connections with permits for the installation, construction, alteration, repair, and connection of sewage systems.

Therefore, any warrantless administrative inspections of Plaintiffs' property pursuant to the Sewage Act were well within the bounds of the Fourth Amendment.

will be denied as to Plaintiffs' Fourth Amendment claim, but Plaintiff may only seek relief on entries occurring after July 2, 2102.

### b.  Count Two: Procedural Due Process

In Count Two, Plaintiffs assert Defendants violated their Fourteenth Amendment right to procedural due process. To state a § 1983 claim for deprivation of procedural due process, a plaintiff must allege: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available did not provide due process of law. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *Dennis v. DeJong*, 867 F. Supp. 2d 588, 623 (E.D. Pa. 2011). In addition, a plaintiff must have "taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116. The use and enjoyment of property are interests protected by the Fourteenth Amendment due process clause. *Accord DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 601 (3d Cir. 1995), *abrogated on other grounds by United Artists*, 316 F.3d 392.

Plaintiffs claim they were sent defective notices of violation of various Township ordinances, stonewalled at Township meetings, and denied access to public documents. In their response to Defendants' motion for summary judgment, however, Plaintiffs discuss only a single Notice of Condemnation that was posted at Plaintiffs' property on April 22, 2014, and removed the next day. Even considering Defendants' conduct prior to July 2, 2012 (the statute of limitations cutoff) and assuming Plaintiffs have established that they were deprived of their use and enjoyment of property, Plaintiffs have failed to establish that the procedures available to them were inadequate.

As to the various notices of violation sent to Plaintiffs over the past ten years that were referenced in Plaintiffs' Revised Second Amended Complaint, every notice other than the April 22, 2014, Notice of Condemnation included information about appellate procedures. Plaintiffs either failed to appeal or took advantage of the procedures available to resolve the issues. Plaintiffs assert they did not appeal most of these notices because of cost, and they "do not have money to challenge everything." *See* PSUF ¶¶ 20, 24, 25, 27. Their own failure to exhaust the remedies available to them is not a denial of due process. Plaintiffs also assert they did not challenge the non-traffic citations issued by the Township in 2011 for garbage accumulation and illegal fires because the citations spelled Indira's name incorrectly. *Id.* at ¶ 35. These same citations, however, also named Plaintiff Aswin, and so, Plaintiffs' excuse for failing to appeal is not compelling. *See* Defs.' Exs. 25, 26, 27. In another instance, a municipal lien was placed on the property in favor of the Township through a properly filed lien claim in the Court of Common Pleas of Lancaster County for nuisance abatement charges related to these citations. *See* Defs.' Exs. 28, 29. Plaintiffs eventually paid the lien. *See* Defs.' Exs. 37, 38; PSUF ¶ 43. Thus, procedures were available to Plaintiffs, and they took advantage of those procedures to resolve the issue.

As to the Notice of Condemnation issued on April 22, 2014, Plaintiffs assert the Notice was defective because it did not give them any rights for a hearing or an appeal. Following a complaint by Plaintiffs' then-attorney immediately after the Notice was posted, Lopez and Groff removed the Notice, because, as Lopez explained, the Notice did not "give a means to abate the problem, so the document was not filled out correctly." Pls.' Ex. 6, at 34. Given that this Notice was withdrawn almost immediately, there was no violation of Plaintiffs' due process rights.

The remainder of Plaintiffs' claims as to Count Two concern the Township's denial of a continuance for an appeals hearing regarding alleged violations of the Sewage Facilities Act. Nine days after the defective Notice of Condemnation, High issued Plaintiffs a letter notice dated May 1, 2014, stating that Plaintiffs were in violation of the Pennsylvania Sewage Regulations Act and informing Plaintiffs they had to contact him within ten days and complete repairs within thirty days or else charges would be filed. Defs.' Ex. 41. On July 3, 2014, Plaintiffs were sent a formal Notice of Violation, stating Plaintiffs were in violation of the Sewage Facilities Act, they have the right within thirty days of receipt of the Notice to request a hearing before the Board of Supervisors of Paradise Township, and failure to remedy the problem would result in fines. Defs.' Ex. 42. Plaintiffs appealed this Notice and a hearing was set for August 28, 2014. Plaintiffs allege their attorney was not given notice of the hearing until August 22, 2014, and because neither Plaintiffs nor their attorney were available so quickly, they requested a continuance. *See* Pls.' Ex. 22. This request was denied, and the hearing was conducted in absentia on August 28, 2014. During the hearing, the Township supervisor stated that Plaintiffs informed him they would be absent from the United States for a period of one month beginning September 1, 2014, and for that reason, the Board of Supervisors of Paradise Township declined to grant Plaintiffs' requested continuance. Assuming Plaintiffs were given notice of the hearing on August 22, they were not denied due process; six days is plenty of time for Plaintiffs' attorney to find substitute counsel or for a member of the Aswin group to rearrange his schedule to appear at the hearing. Also, it was reasonable for the Township to deny a request for continuance that would delay addressing the alleged sewage violations, an issue of public health and safety.[12]

---

[12] After the Board of Supervisors sustained the findings in the July 3, 2014, Notice of Violation, imposed $2,500 assessment against Plaintiffs for violations of the Sewage Act, and revoked permission to operate the on-lot sewage disposal field for a portion of the Motel, Plaintiffs

Plaintiffs' claim they were stonewalled at Township meetings is not supported by the record, and Plaintiffs did not raise these allegations in their response to the motion for summary judgment or in their statement of undisputed facts. Further, the only facts alleged to support the claim they were denied access to public documents concern Defendant Riehl, and, as explained below, these allegations fail as a matter of law.

Because Plaintiffs have not made out a violation of a constitutional right, the individual Defendants are protected by qualified immunity. Further, Plaintiffs have not established any facts showing that an official policy, practice, or custom led to a denial of their due process rights. No jury could return a verdict for Plaintiffs as to claims in Count Two, and Count Two will be dismissed.

### c. Count Three: Substantive Due Process

In Count Three, Plaintiffs assert Defendants have violated their right to substantive due process as guaranteed by the Fourteenth Amendment. In order to assert a valid substantive due process claim, a plaintiff must prove he suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience. *See Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists*, 316 F.3d at 400-02 (3d Cir. 2003)); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) (explaining that when abusive action by a member of the executive branch is alleged, the government conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."); *United Artists*, 316 F.3d at 399-400 (3d Cir. 2003) ("[O]ur cases

---

appealed to the Court of Common Pleas of Lancaster County. Defs.' Reply, Exs. K, M. The matter is currently pending. Thus, Plaintiffs have not been denied any due process because they availed themselves of the state remedies afforded to them, and they have not yet exhausted those remedies. *Cf. Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988) (finding Pennsylvania's judicial mechanism to challenge the administrative decision to deny an application for a building permit comports with due process), *abrogated on other grounds by United Artists*, 316 F.3d 392.

have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience."); *Miller v. City of Philadelphia*, 174 F.3d 368, 375-76 (3d Cir. 1999) (explaining that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense" and "the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" (citation omitted)).[13] The determination of whether conduct "shocks the conscience" varies depending upon the facts of each particular case. *See United Artists*, 316 F.3d at 400; *see, e.g.*, *Rochin v. California*, 342 U.S. 165, 172-73 (1952) (finding the forced pumping of a suspect's stomach was conduct that "shocks the conscience" and violates the "decencies of civilized conduct"). *But see e.g.*, *Lewis*, 523 U.S. at 855 (holding a police officer did not violate substantive due process by causing death through reckless indifference to life in a high-speed chase aimed at apprehending a suspect). The use, enjoyment, and ownership of property are worthy of substantive due process protection. *See Chainey*, 523 F.3d at 219 (citation omitted).

Plaintiffs allege they have continually suffered from Defendants' racist abuse, selective enforcement, and extensive harassment and intimidation in relation to use of their property and its prospective sale, and as proof of racial animus they allege Township officials approached problems with white business owners much differently than the way they handled problems with Plaintiffs. For example, Plaintiffs claim their white neighbor, Chris Stoltzfus, was treated more favorably "without any of the same fuss and difficulties from Township Defendants." PSUF ¶ 7.

---

[13] In their response to Defendants' motion for summary judgment, Plaintiffs rely on an outdated standard for substantive due process claims—the "improper motive" test. *See* Pls.' Resp. to Defs.' Mot. for Summ. J. 9 (citing *Bello v. Walker*, 840 F.2d 1124 (3d Cir. 1988)). The new test for executive action violations of substantive due process is the "shocks the conscience" test. *See United Artists*, 316 F.3d at 401 ("We thus hold that, in light of *Lewis*, *Bello* and its progeny are no longer good law.").

Specifically, Indira alleges she complained about him improperly cutting down trees and noise from his property but the Township took no action to stop him. However, Indira stated she never filed formal objections, applied for an injunction to the zoning committee, or took court action out of "good gesture." Pls.' Ex. 1, at 109. Stoltzfus admitted he would sometimes operate his business outside of the time restrictions, but he never received any complaints. Pls.' Ex. 23. Groff stated that while there were restrictions on Stoltzfus's hours of operation, he was also not aware of any complaints. Pls.' Ex. 5. Even if Indira did complain about trees or noise to the Township, she did not take formal action; Groff was not made aware of any complaints and no other Township official testified they received complaints.

Plaintiffs also claim the Township had a lien against their property that it enforced using, inter alia, search and arrest warrants, and assert the Township did not use such enforcement mechanisms against Josh Esch, a white business owner whose property was also subject to a lien by the Township. Lopez admitted at his deposition that there was a $12,000 lien against Esch's property for violations of the Uniform Construction Code, and the Township did not obtain search or arrest warrants to enforce the lien. Pls.' Ex. 6, at 44-45. However, the lien against Plaintiffs' property, originating from the Township's payment to a third-party contractor to remove the debris on Plaintiffs' property for which they were cited in the 2011 citations discussed above, was not, as they claim, enforced by "search warrants, arrest warrants, and so on." PSUF ¶ 7. The only search warrant connected to the property was issued on December 14, 2014, to "search[] for evidence of violation of the Pennsylvania Sewage Facilities Act," Defs.' Ex. 46, and had nothing to do with the lien. The only arrest warrants connected to Plaintiffs were for Indira after she failed to appear for the hearing on the citations and failed to pay the fine.

Defs.' Exs. 34, 35.[14] While the lien on Plaintiffs' property may have a tangential relation to the arrest warrant, the lien was enforced through a properly filed lien claim in the Court of Common Pleas of Lancaster County, Defs.' Exs. 28, 29, and Plaintiffs eventually paid it. Not only were Plaintiffs' not deprived of any property interests, but the Township officials' conduct was not action that shocks the conscience.

Plaintiffs also assert that they received condemnation notices for alleged violations of the Sewage Act, but two businesses located in the Township whose owners are white—Red Caboose Motel and Toy Train Association—did not receive any such notices, even though they also had problems with their sewage. Groff testified, however, the Township explained to all three property owners they needed to fix the sewage problem by either a new system or "whatever means that were legal," and Red Caboose and Toy Train, unlike Plaintiffs, chose to install new systems. Pls.' Ex. 5, at 40-41. He admitted he did not think those businesses received condemnation notices and Red Caboose may have been given an extension of time to remedy the problem, but the Township also worked with Plaintiffs and allowed them to keep the system pumped while they were trying to sell the property instead of requiring them to install a whole new system. *Id.* at 42. Groff's testimony demonstrates not only did Plaintiffs fail to install a new system, but they also were given special treatment and allowed to delay installation of a new system while they tried to sell the property.

---

[14] Lopez testified that these proceedings were initiated because Plaintiffs failed to clean up debris on their property—debris that resulted from burning of refuse in violation of Township ordinances—and the Township had to pay to have the debris removed by a third party. Defs.' Ex. 7, at 14-16. He also testified that had Plaintiffs cleaned up the debris, the Township would not have cited them for burning the debris in the first place because the Township affords its members opportunities to fix these types of issues before hiring a third party and requesting reimbursement from a magistrate. *Id.*

Plaintiffs also point out as proof of racial animus that out of the past five years, four of the last six liens placed on property in Paradise Township were on non-white/minority property owners. Pls.' Ex. 14. However, three of these four liens were against properties owned by one pair of owners (Cun Yu Wei and Mei Ying Lin), and the fourth was on the property owned by Plaintiffs for the 2011 citations. Thus, out of the property owners with Township liens, there were an equal number of non-white/minority owners as white owners, and the Township clearly placed liens on property with white owners as well as property with non-white/minority owners.

Plaintiffs further assert Defendants' racial animus is demonstrated by Defendants' verbal racist remarks, most of which allegedly occurred prior to July 2, 2012, and therefore fall outside of the statute of limitations. However, even if the Court did consider all of the alleged comments, they are not related in any way to a deprivation of Plaintiffs' property rights and do not support a claim that any such deprivation was motivated by racial animus.

The remainder of the allegations in this Count concerns Defendants' alleged discouragement of prospective buyers at a 2012 auction for the property. Plaintiffs claim a constable arrived at the auction, and, in front of potential buyers, threatened to arrest Indira. They claim this constable was sent by the Township, specifically by Lopez. Pls.' Ex. 9, at 38, 39. Although they assert this claim against all of the individual Defendants, Periyasamy stated he did not observe Groff at the auction and he did not mention High or Riehl in connection with the auction. Pls.' Ex. 9, at 38, 39. Indira was in Ohio at the time, and she could not describe the events other than what her husband told her. Defs.' Ex. 49, at 332. Lopez denied that he spoke to anyone at the auction or said anything about Indira being arrested, but admitted he told some potential buyers about defects in the property, presumably at a date either before or after the auction. Pls.' Ex. 6, at 45. At oral argument on the motion for summary judgment, Defendants

19

confirmed a constable arrived at the auction intending to arrest Indira, but this arrest warrant was issued by the County, not the Township, and related to Indira's failure to attend the hearing on the 2011 non-traffic citations, as explained above. The constable was acting on behalf of a County magisterial district judge and could not have been sent by Lopez, as Plaintiffs allege.

Plaintiffs have failed to demonstrate the deprivation of any protected right and also that any action by Township officials in connection with such a deprivation shocks the conscience. Plaintiffs have not identified any Township policy or practice violating their rights of substantive due process, nor have they overcome the individual Defendants' qualified immunity. Even drawing all reasonable inferences in favor of Plaintiffs, there is no genuine issue of material fact as to this claim, and Defendants are entitled is entitled to judgment as a matter of law. Accordingly, Count Three will be dismissed.

### d. Count Four: Equal Protection

In Count Four, Plaintiffs assert Defendants have violated their rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment. To bring a § 1983 equal protection claim, "plaintiffs must prove the existence of purposeful discrimination." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (quoting *Andrews*, 895 F.2d at 1478). Further, "[t]hey must demonstrate that they received different treatment from that received by other individuals similarly situated." *Id.* (quoting *Andrews*, 895 F.2d at 1478).

Plaintiffs argue there is ample evidence showing disparate treatment based upon race/nation origin in relation to Plaintiffs' fundamental rights and interests. The bulk of Plaintiffs' claims that white business owners were treated more favorably have been addressed above and will be dismissed.

As to the problems with the sewage system, Plaintiffs assert they were unfairly targeted by Defendants, and there was never a problem with their sewage system. In support of their claims, Plaintiffs rely on several inspection reports they assert represent that the sewage system was operating effectively. First, a 2006 report by Thomas H. Erb & Sons, Inc., a Pennsylvania Septage Management Association inspector states that the sewage system was working properly. Pls.' Ex. 6, at 42-43. However, the 2006 report indicates it is for the rear building of the property only and does not state the sewage system was working properly as to the new addition Plaintiffs had built after they bought the property. *Id*. Further, Thomas H. Erb & Sons conducted a second inspection in 2009 at the request of the Township; this time it stated it was unable to verify the system was working properly and listed the overfull condition of the septic tank and sewer line as "unsatisfactory." Pls.' Ex. 11.

Plaintiffs also rely on two reports made by Kelly Phillips, a company specializing in cesspool and septic tank pumping and portable toilet rentals. The first is dated December 7, 2014, and states based on "just field observation" Kelly Phillips found no regulatory malfunctions or unsatisfactory conditions. Pls.' Ex. 7. The second is dated January 17, 2015, and states "based on our inspection, we are able to verify that the system which we inspected is functioning properly at this time." *Id*. High, however, testified that Kelly Phillips is not a qualified or certified inspector of sewage lines and the drain field size cited in the report is inadequate to drain sewage from a property the size of Plaintiffs' motel. Pls.' Ex. 8, at 35. In addition, on December 4, 2014, the Township applied for and received a search warrant to inspect Plaintiffs' property for Sewage Act violations, and requested Thomas Erb & Sons, Inc., to again inspect the property's on-lot wastewater treatment systems. On December 5, 2014, two days before Kelly Phillips's first inspection, Thomas Erb found that two of the three systems

identified (not including the system for the 2004 addition by Plaintiffs) were malfunctioning. Defs.' Reply, Ex. B. Further, also on December 5, 2014, the Township retained Sharp Septic, LLC to pump the two malfunctioning tanks, Defs.' Reply, Ex. E, and therefore, Kelly Phillips's 2014 inspection finding satisfactory conditions just two days later was not necessarily due to a working sewage system. Defendants claim currently at least two of the sewage systems on Plaintiffs' property are not functioning, and Plaintiffs repeatedly pumped one of those septic systems to allegedly conceal its malfunctioned state. *See* Defs.' Reply, Ex. D.[15]

From these reports, it is clear some kind of sewage problem existed on Plaintiffs' property and the Defendants did not unfairly target them. It was not unreasonable for the Defendants to request a search warrant to inspect for Sewage Act violations given the existence of a potential threat to public safety. Plaintiffs have not shown that they have been treated differently than other property owners, nor have they demonstrated that any difference in treatment was unjustified. Count Four will therefore be dismissed.

### 2. Count Five: 42 U.S.C. § 1981

In Count Five, Plaintiff assert claims pursuant to 42 U.S.C. § 1981. However, while § 1981 guarantees certain rights, 42 U.S.C. § 1983 provides the exclusive federal remedy to enforce those rights against state actors. *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009); *see id.* at 120-21 (finding § 1981 did not create an implied private right of action against state actors beyond that provided by § 1983 (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989))); *see also Ford v. Se. Pa. Transp. Auth.*, 374 F. App'x 325, 326 (3d Cir. 2010) ("No private right of action lies against a state actor under § 1981." (citing *McGovern*, 554

---

[15] The Court notes that, as explained above, Groff testified the Township permitted Plaintiffs to keep the system pumped instead of installing a new system while they were trying to sell the property. Pls.' Ex. 5, at 40-41.

F.3d at 121)). In their motion for summary judgment and at the March 16, 2015, oral argument, Plaintiffs conceded that unless the Court ignores Third Circuit precedent, they do not have a remedy pursuant to § 1981. Because the Court follows Third Circuit case law, Count Five will be dismissed.

### 3. Count Six: Tortious Interference with Contract

In Count Six, Plaintiffs assert claims for tortious interference with contractual relations against the Township officials in their official capacities. The Pennsylvania Political Subdivision Tort Claims Act (PSTCA) shields municipalities from liability from these types of claims. *See* 42 Pa. Cons. Stat. §§ 8541, 8542; *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 276 n.25 (E.D. Pa. 2007). The PSTCA also immunizes individual municipal officials from liability to the same extent as the local agencies that employ them except, however, that individual officials may be held liable for acts amounting to a crime, actual fraud, actual malice, or willful misconduct. *See* 42 Pa. Cons. Stat. §§ 8541-42, 8545, 8550; *Leidy v. Borough of Glenolden*, 277 F. Supp. 2d 547, 567-68 (E.D. Pa. 2003) (citing Third Circuit case law defining willful misconduct as entailing intent to harm or involving knowledge that the conduct is unlawful), *aff'd sub nom. Liedy v. Borough of Glenolden*, 117 F. App'x 176 (3d Cir. 2004).

To state a claim for tortious interference with contractual relations a plaintiff must allege: "(1) an actual or prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damages resulting from the defendant's conduct." *Perma-Liner Indus., Inc. v. U.S. Sewer & Drain, Inc.*, 630 F. Supp. 2d 516, 524 (E.D. Pa. 2008) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 470-71 (Pa. 1979)); *see also McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695, 703 (E.D. Pa. 2002). Under

Pennsylvania law, claims for tortious interference are subject to a two-year limitations period. *See* 42 Pa. Cons. Stat. Ann. § 5524(7); *Maverick Steel Co. v. Dick Corp./Barton Malow*, 54 A.3d 352, 358 (Pa. Super. Ct. 2012).

Plaintiffs assert Township Defendants interfered with three different potential or actual contracts: (1) Chris Stoltzfus's interest in buying the property in 2009; (2) Daniel Stoltzfus's $600,000 offer to purchase the property in 2012, and (3) a 2013 potential offer from Sunni Raja.

First, according to Indira, Chris Stoltzfus was interested in purchasing Plaintiffs' property in 2009 but former Defendant Randy Mauer and the Township told him not to buy it. Pls.' Ex. 20, at 266.[16] This potential contract falls outside of the two-year statute of limitations. Even if it was a viable claim, there is simply no evidence in the record to support Plaintiffs' claim that anyone intentionally or improperly interfered with this potential contract other than Indira's testimony that Township officials told him not to buy it. This allegation does not constitute a crime, actual fraud, actual malice, or willful misconduct, and the officials are therefore immune.

Next, Plaintiffs assert Daniel Stoltzfus offered $600,000 to purchase the Motel following the 2012 auction, but withdrew a contract to purchase because of information he received from the Township Defendants and former Defendant Chris Stoltzfus, a private citizen.[17] Indira testified Daniel Stoltzfus told her that Groff informed him the previous owner had "dumped a lot of bad fill" at the property, Pls.' Ex. 10, at 396, and Chris Stoltzfus told him he would have to spend thousands of dollars on a new storm management and hookup, Pls.' Ex. 1, at 139. Indira also stated, however, that Aswin never signed the proposed agreement of sale from Daniel

---

[16] Randy Mauer and his business, Associated Building Inspections, were dismissed by stipulation on March 5, 2015.

[17] By Order of February 24, 2015, this Court dismissed all claims against Chris Stoltzfus with prejudice.

Stoltzfus on advice of counsel; her attorney intended to draft revisions to the agreement because there were several "sticking points" upon which the parties disagreed, mainly where the money for the sale would be held until the sale went through and terms dealing with the buyer's and seller's default. Defs.' Ex. 49, at 352-57. Indira stated Daniel Stoltzfus was hesitant to allow the money to transfer right away because he had concerns about the Township's rules and the presence of the supervisor, manager, and zoning officer at the auction, "thr[ew] a cloud." *Id.* at 355-56.[18] She stated that she never rejected Stoltzfus's offer, but she had a counteroffer on the table with the terms she wanted. *Id.* at 359.

There is no evidence the Township officials improperly interfered with this potential contract nor evidence to overcome their immunity. First, Chris Stoltzfus is not a state actor, and therefore, any comments he made to Daniel Stoltzfus are not relevant to this claim. Other than a comment the previous owner dumped "bad fill," Indira does not specify what other comments Township officials made to Daniel Stoltzfus. Assuming any additional comments by the Township officials concerned the sewage problems, the record demonstrates that as of 2012 there were several citations and notices about the sewage, so any information the Township gave to Daniel Stoltzfus in this regard does not amount to fraud or willful misconduct. In addition, Defendants' presence at a public auction for a piece of property located within their Township is not indicative of a willful or malicious intent to interfere with the sale. The record demonstrates

---

[18] The only prospective or actual contract Plaintiffs allege was affected by the events at the 2012 auction was the potential contract with Daniel Stoltzfus, even though he did not make an offer until after the unsuccessful auction.

As explained above, a constable sent by a County judge arrived at the auction with a proper arrest warrant and announced his reason for being does not support the allegation that the Township Defendants improperly interfered with any potential or actual contract. Further, Indira was not able to describe any events at the auction because she was out of town, and Periyasamy did not testify that he observed any of the individual Defendants telling Daniel Stoltzfus, or any other potential buyer, false information about the property.

the contract with Daniel Stoltzfus did not come to fruition because of choices made by Plaintiffs relying on the advice of their attorney.

Lastly, Plaintiffs claim Sunni Raja wanted to buy the property in 2013 but withdrew from contract negotiations because Lopez and Groff falsely told Raja that the drinking water at Plaintiffs' Motel was contaminated by sewage. Pls.' Ex. 21, at 339-43. Indira admitted, however, that she instructed Raja to speak to the Township. *Id.* She testified that she always tells prospective buyers to "do your due diligence with the Township" because "there are requirements" for the sewer hookup. Pls.' Ex. 1, at 140. In June 2013, Indira and Raja attempted to work out a management agreement, but while both parties' legal counsel was modifying and preparing the deal, Raja decided he could not wait and bought property elsewhere. Pls.' Ex. 21, at 343-44. In addition, Indira stated she did not want a management agreement; she wanted to sell the property outright and so she "never pursued this." *Id.* at 343. The record therefore does not demonstrate the Township officials interfered with this potential contract. The fact that Township officials informed Raja—after Indira encouraged him to speak to the Township— about the sewage problems that had existed well before 2012 does not indicate they acted with malice or willful misconduct.

As to all three potential contracts, not only is there no evidence of interference, there is also no evidence from which a jury could find that the individual Defendants intended to violate the law or to bring about Plaintiffs' alleged harm; therefore Defendants are immune from liability for the tortious interference with contractual relations claim and Count Six will be dismissed.

**4.  Defendant Sally Riehl**

Plaintiffs broadly assert claims pursuant to 42 U.S.C. § 1983 against Defendant Riehl, Paradise Township Secretary/Treasurer, for violations of their rights to substantive and procedural due process (Counts Three and Four) and tortious interference with contract (Count Six). In their Revised Second Amended Complaint and in their response to Defendants' motion for summary judgment, it appears Plaintiffs' sole allegation as to Riehl, however, is that she "denied Plaintiff Indira's request to view public records and . . . said to Plaintiff Indira 'nobody here asks for this, only you Indians think you can come and change everything here.'" Revised Sec. Am. Compl. ¶ 24; *see also* Pls.' Ex. 20, at 196, 197. Indira did not issue a formal Right to Know request or take any other legal steps to enforce her right to view public records. *Id.* at 195-96. She also admitted that after her interaction with Riehl, she emailed a Right-to-Know officer who provided some, but not all, documents she requested. *Id.* at 198-99. Even viewing all facts asserted against Riehl in a light favorable to Plaintiffs, the allegation that Riehl reportedly made racist comments and denied a verbal request to view public files does not establish a claim for violation of substantive and procedural due process rights or interference with contract. As such, all claims asserted as to Riehl will be dismissed.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.